288 So.2d 200 (1973)
Robert H. MACKENZIE, Appellant,
v.
HILLSBOROUGH COUNTY, a Political Subdivision of the State of Florida and the State of Florida, Appellees.
No. 44211.
Supreme Court of Florida.
December 12, 1973.
Rehearing Denied February 5, 1974.
Robert H. Mackenzie, Tampa, for appellant.
Robert L. Shevin, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., and Michael O'Brien, County Atty. and David W. Thorpe, Asst. County Atty., for appellees.
BOYD, Justice.
This cause is before us on appeal from the Court of Record, Hillsborough County. Appeal was originally taken from the Court of Record to the District Court of Appeal, Second District, and the latter Court has transferred the cause to this Court, pursuant to Rule 2.1, subd. a(5)(d), Florida Appellate Rules, 32 F.S.A.
The facts, as reported by the Second District in a two-to-one decision, are as follows:
"Mackenzie, appointed counsel, sought compensation in excess of the maximum of $750 provided by Fla. Stat. § 925.035 (1971), F.S.A. for defending Warren Carey Riley, claiming that the statutory maximum is unconstitutional. This proceeding, which involves Hillsborough County and Mackenzie as the sole parties in interest, is taken as an appeal from a costs order, and we are asked to rule on the threshold question whether it is reviewable by appeal or by certiorari, as was done in Lunetto v. State, Fla. App.2d 1973, 274 So.2d 251; Dade County v. Strauss, Fla.App.3d 1971, 246 So.2d 137; and Dade County v. Carr, Fla. App.3d 1970, 231 So.2d 844.
"Our view is that the constitutional question involved is one committed by the Constitution, in Article V, Section 3, F.S.A., to the Supreme Court, and we accordingly transfer the cause there. The trial judge clearly was asked to rule and did rule on the question of the constitutionality of the $750 limitation in Fla. Stat. § 925.035 (1971).

*201 "The cause is transferred to the Supreme Court pursuant to F.A.R. 2.1, subd. a(5)(b), 32 F.S.A."
In dissent, Judge Liles stated:
"I would dissent from the majority transferring this to the Supreme Court for the reason that this is a non-appealable order. Appellant was not a party in the criminal action but was the attorney for defendant Warren Carey Riley.
"Appellant may bring a suit in his own name for attorney fees, but I don't believe he is a proper party to this appeal."
It is apparent that two questions are involved in this appeal. The first question: "Is appellant a proper party to the appeal?" The answer: "Yes." Cf. Dade County v. Strauss,[1] wherein it was held that Dade County, although not a party to a certain criminal case, was entitled to certiorari to review the criminal court's supplemental order, arising out of the same case, which had directed payment of a fee to the special assistant public defender in the case. The "proper party" shoe fits, and appellant may wear it.
The second question: "Is Section 925.035, Florida Statutes, F.S.A., constitutional?" The answer: "Yes." Cf. Dade County v. Strauss, supra, wherein it was noted that the right to recover attorneys' fees as part of the costs in an action did not exist at common law, and therefore it must be provided for by the Legislature's enactment of Section 925.035, Florida Statutes, F.S.A. And, while appellant argues that Section 925.035 fails to comport with the Due Process and Equal Protection Clauses of the Constitutions of the United States and of the State of Florida, as applied to the provision by defense counsel of extraordinary services, we are of the opinion that: 1) Section 925.035 does, both on its face and as applied, comport with the foregoing constitutional provisions; and, 2) if a change in the foregoing statutorily-provided compensation be called for, it is within the province of the Legislature, not the courts, to make such change.[2] As the trial judge observed to appellant:
"I think your complaint is more appropriately within the realm of the legislative branch rather than the judicial branch."
We agree.
Accordingly, the Hillsborough County Court of Record's "Order on Report of Court Appointed Counsel and Application *202 for Discharge and Compensation" is affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
The reliance of the majority upon F.S. Section 925.035, F.S.A., as written, to be the end-all of Appellant Mackenzie's claim for extra compensation for his legal services is misplaced. The ceiling of $750 prescribed by the statute must be read to apply only when reasonable in the light of the special circumstances of the particular case and applicable provisions of the Constitution.
No citizen can be expected to perform civilian services for the government when to do so is clearly confiscatory of his time, energy and skills, his public service is inadequately compensated, and his industry is unrewarded.
In this case it appears the Appellant Mackenzie was appointed counsel in a capital case upon the tacit assumption he would adequately and competently represent the indigent defendant. In doing so conscientiously he was compelled to provide legal services of a recognized value far in excess of the $750 statutory ceiling. The record details the voluminous amount of work involved in his representation  the large amount of time counsel expended at the expense of his private practice. There was uncontradicted evidence from reputable attorneys that a reasonable attorney's fee to compensate Appellant under the circumstances involved would be not less than $25,000.
I do not believe that good public conscience approves such shoddy, tawdry treatment of an attorney called upon by the courts to represent an indigent defendant in a capital case. Such treatment is out of harmony with the rationale of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, that a reasonable measure of equal legal representation will be afforded indigents similar to that which wealthy clients are able to afford. If it were the rule in Florida that good counsel would be paid commensurate with the value of their services rendered indigent defendants, the spirit of the Gideon case and not just the letter would be more honestly and quantitatively served. Were it not for the conscientious dedication and economic sacrifice of able counsel who are usually inadequately compensated for their services, most of the indigent capital case defendants would receive short shrift in our courts. Even with this dedication one gets the feel that quite often the failure to adequately compensate counsel results in less than satisfactory indigent representation. The adage that "you get what you pay for" applies not infrequently. In our pecuniary culture the calibre of personal services rendered usually has a corresponding relationship to the compensation provided.
I have carefully read Appellant's brief. I am impressed with his claim for adequate compensation and the argument he makes in support. I will attempt to give a brief resume of some of the authorities he cites in his brief.
People v. Randolph (1966), 35 Ill.2d 24, 219 N.E.2d 337, 18 A.L.R.3d 1065, where the Illinois Supreme Court said:
"... The statute is not unconstitutional on its face and the $500 maximum is reasonable and appropriate where an appointed attorney can continue to accommodate his regular practice and business and is not compelled to assume a staggering burden and sacrifice that no reasonable person could expect of any member of the bar. However, the statute cannot constitutionally be applied where it appears, as here, that appointed counsel cannot continue to serve because they are suffering an extreme, if not ruinous, loss of practice and income and must expend large out-of-pocket sums in *203 the course of trial. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799."
In Bradshaw v. Ball, 487 S.W.2d 294 (1972), the Kentucky Court of Appeals held a statute unconstitutional that required court-appointed attorneys to provide uncompensated services for indigents. It said:
"It is in the public interest that the administration of criminal justice proceed fairly, impartially, expeditiously and efficiently. Therefore, it appears elemental that the public interest in the enforcement of criminal laws and the constitutional right of the indigent defendant to counsel can be satisfied only by requiring the state to furnish the indigent a competent attorney whose service does not unconstitutionally deprive him of his property without just compensation."
The Indiana Supreme Court in Knox County Council v. State (1940), 217 Ind. 493, 29 N.E.2d 405, 408, said:
"... But, from the earliest times, this court has held that to require the services of an attorney to prosecute and defend without fee is in conflict with section 21 of article 1 of the Constitution of Indiana. Blythe v. State, 1853, 4 Ind. 525; Webb, Auditor, etc. v. Baird, 1854, 6 Ind. 13... .
"`... Honorary duties are hardly susceptible of enforcement in a Court of law. Besides, in this state, the profession of the law was never much favored by special pecuniary emoluments ... The practitioner, therefore, owes no honorary services to any other citizen, or to the public. The constitution and laws of the state go upon the just presumption that the public are discriminating enough in regard to qualifications. Every man having business in Court, is presumed to be as competent to select his legal adviser as he is to select his watchmaker or carpenter. The idea of one calling enjoying peculiar privileges, and therefore being more honorable than any other, is not congenial to our institutions. And that any claims should be paid for their particular services in empty honors, is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights.
"`... To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic. The law which requires gratuitous services from a particular class, in effect imposes a tax to that extent upon such class  clearly in violation of the fundamental law, which provides for a uniform and equal rate of assessment and taxation upon all the citizens.' [Webb, Auditor, etc. v. Baird, 1854, 6 Ind. 13 at pages 16, 17, 18, 19.]"
Circuit Judge Hodges in the case of Carr v. Dade County (Fla. 1971), 250 So.2d 865, 868, when sitting as a visiting judge on this Court, said in dissent that disallowance of an attorney's fee because of absence of statutory authority therefor was "in the opinion of many authorities, anachronous and should be discarded as an outworn idea belonging to another era. It does not appear to be congenial with our contemporary institutions and conceptions of equality and criminal justice." See also: Warner v. Commonwealth (Ky. 1966), 400 S.W.2d 209; Jones v. Commonwealth (Ky. 1970), 457 S.W.2d 627; State v. Rush (1966), 46 N.J. 399, 217 A.2d 441.
My study of this matter heretofore led me to conclude in a dissent in Strauss v. Dade County (Fla. 1971), 253 So.2d 864, 866, that
"A reasonable fee is authorized by law and we so held in Carr; and not one that is arbitrarily limited to $750.
* * * * * *
"... Many would contend a $750 fee limitation is an obvious contradiction of an allowance of a `reasonable fee'  in *204 most capital cases and an impairment of an indigent's constitutional right to be afforded competent representation in a case where his life is at stake. However, the point I make here is that the fee limitation neither by statute nor logical interpretation is applicable to felony cases less than capital."
It appears to me that Appellant is entitled under the rationale of Carr v. Dade County, supra, to have the trial judge fix a fee that will reasonably compensate him for his services in the trial court provided Hillsborough County is given full opportunity to be heard in the matter with right of review if either party is aggrieved.
I am convinced that pertinent provisions of the Florida Constitution require the conclusion reached herein. See Sections 2, 9, 11, 16 and 22, Article I, Florida Constitution and similar provisions in the United States Constitution. Section 2 provides that all are equal before the law and have an inalienable right "to be rewarded for industry." Section 925.035 obviously fails to meet that test.
NOTES
[1] 246 So.2d 137 (Fla.App.3d), cert. denied, 253 So.2d 864 (Fla. 1971), reh. denied.
[2] Said statute provides:

"Appointment and compensation of an attorney in capital cases; appeals from judgments imposing the death penalty. 
"(1) If the court determines that the defendant in a capital case is indigent and desires counsel, it shall appoint an attorney to represent the defendant. If the court appoints an attorney other than the public defender, the attorney shall be allowed reasonable compensation not to exceed seven hundred fifty dollars for the trial. If more than one attorney is appointed, the total compensation for the trial shall not exceed one thousand dollars. A reasonable amount shall be allowed for the cost of investigation and preparation of the case for trial.
"(2) If the defendant is convicted and the death sentence imposed, the appointed attorney shall prosecute an appeal to the supreme court. The attorney shall be allowed reasonable compensation not to exceed five hundred dollars for the appeal. If the attorney first appointed is unable to prosecute the appeal, the court shall appoint another attorney and allow reasonable compensation not to exceed five hundred dollars.
"(3) If there is a second trial of the same case, the appointed attorney shall be allowed reasonable compensation not to exceed the fee awarded for the defense at the first trial.
"(4) When the appointed attorney in capital cases has completed the duties imposed by this section, he shall file a written report in the trial court stating the duties performed by him and apply for discharge.
"(5) All compensation and costs provided for in this section shall be paid by the county in which the trial is held unless the trial was moved to that county on the ground that a fair and impartial trial could not be held in another county, in which event the compensation and costs shall be paid by the original county from which the cause was removed."